Please call the next case. Yes, your honor. Henry Shoemaker, Brett Allen Shoemaker, for the feds, Russell Planson, counsel for Evelyn, U.S. trustee. Good morning, your honors. Mark Shoemaker, pro se. Appellant. Mr. Shoemaker, how much time do you wish to reserve? Five minutes, your honor. I'll tell you when it's there. Honorable panel, I believe the first issue that's primary is the application of Rule 404 and 906 is dispositive of this appeal. And the concept that the existing contract and the existing Ninth Circuit cases seem to, can be distilled down to either you file a motion or the time isn't extended. That's consistent with the authority that says the deadlines to deny discharges are strictly construed without qualification. And it does seem to be counterposed against the U.S. trustee's position that Section 727 is supposed to be strictly construed. Now... You stipulated the extension, correct? That's correct. And the court did approve that stipulation, correct? Yes. And you're saying that the requirement of a motion, as you see it, can't be waived? That's correct, your honor. If you look, the only case that was cited was a Pennsylvania case, I believe. There's no case of that authority in this circuit. In fact, the Sharastan... Why shouldn't it be waivable by a party stipulating to an extension and the court approving it? What would the motion add to the party? Other than a stipulation? Right. The fact that it's strictly construed under the rules. I mean, it doesn't add or subtract anything. If it's supposed to be a statute, if it's supposed to be a repose, my understanding is it's not a limitation, it's a repose. Are you saying that the lack of a motion prejudiced you somehow? The fact that there was a stipulation rather than a motion prejudiced you somehow? I don't think prejudice is an issue, your honor. I think it's... So it didn't? It didn't prejudice you? I think, you know, we have to take the... We should take the language of the cases per se, in the sense that if they say it's without limitation or it's a limitation, it's without qualification, and it's strictly construed, then the fact of a stipulation shouldn't matter. That was argued in Shavastani. Shavastani tried to argue there was not a formal stipulation, but there was an agreement between the attorneys, and they tried to use that as the basis, so... But had the court approved that in that case? No, right? That's correct, it hadn't. That's not a big difference to you? No, it isn't, because the court doesn't have authority. Because, remember, the whole point is the limitation on the court's authority. The court can't, in the discussions of the previous cases, talking about end runs, the court can't use Section 105 as an end run around at least the way I view it, at least the way the U.S. Supreme Court seems to enunciate it in contract. They can't do an end run under 105 to the limitations set forth in Rule 404 and 9006. So that's what I see. I see it as sort of a case of first impression. So the fact that you have the U.S. trustee's position saying, well, he didn't suffer prejudice, the motion wouldn't have made a difference, it seems like a bright line test to me. That's my position. And then you had the second instance where the case was dismissed by the clerk's office and the court sua sponte came back. So now when you want to talk about whether there's prejudice, there, there was no motion either. And so there, there was no option. A motion to dismiss or a motion to undismiss, right? I'm sorry, what? There was no motion on either side of that. There wasn't a motion to dismiss. It was a pure clerk's error. And likewise, there was no motion to fix the clerk's error. Well, that's correct. There was a sua sponte by the court without a motion. So to me, that seems like a due process issue. You can't have it both ways. You can't say, I didn't suffer any prejudice. Were you entitled to have the adversary proceeding dismissed sua sponte at that point? Do you agree that the dismissal was a mistake? Yes. Okay. And you're saying the court couldn't correct its own mistake on its own? The way I read the, the way I read the application of Rule 4004 and 906, no. Despite 105A saying that nothing in the rules or nothing in the code prevents the court from doing things sua sponte? Well. Do you think the rules supersede the statute? I'm not saying the rules supersede the statute. I'm saying the concept of limitations. So then the concept to this court, does the court have limitations? Is 105, is 105 a omnibus statute that gives the bankruptcy court the power to disregard other applications of limitations? So then what this court, what this panel may be suggesting is that 105 in that instance allows the concept of the strict construction against denial. You don't have to get to 105 to have a court correct its own mistakes, in my view. I'm sorry, what? In my view, you don't have to get to 105 to have a court correct its own mistakes. Well, then how do you deal with the fact of a strict construction with 727 denial? I don't agree with you. I guess. I mean, I'd move on if I were you. Okay. So, and then this brings me to, okay, so that I believe is dispositive. I believe 4004 and 9006 is dispositive. Next, moving to the issue of the application of the court of the findings regarding Section 727. There appears to be, again, in the opposing counsel's brief regarding Rule 1009, the right to amend, as applied to Section 727. I think it's instructive there's no Ninth Circuit cases on point. The appellee did not raise any Ninth Circuit cases. So the question becomes, what is the real purpose of 1009? There seems to be what I see is a contradictory tension between the, it appears the position of the U.S. trustee is that 727 is a strict liability statute. I don't believe there's anything in the Congressional intent or anything in the statutory language that gives evidence that Section 727 is a strict liability statute. So then. Well, I mean, it does say in most of those subsections knowingly, fraudulently, and so forth. So the mental state of the debtor is relevant. That makes it not strict liability, right? I would agree. It's not strict liability. I don't think they're saying it is strict liability. Explain what you mean by strict liability, please. It's application. Meaning that if for Rule 1009 says, and nothing in the Rule 1009 reads, you have the right to amend at any time, obviously up until trial within the specific restrictions, unless there's a finding that, oh, that you really didn't mean to, you were trying to defraud the U.S. trustee or any of the applications that are presented in the appellee's brief. That's not what the rule says. But then you get into the issue of, okay, so what is the purpose of 1009? What is the application purpose of 1009 in respect to this case when my position is there appears to be the argument of a close to strict liability enunciation. I see a lot of, in the case structures, if you notice, there's a lot of excuses for why 727 should be strictly applied. However, it's very interesting that the application of 727 is supposed to be strictly construed in favor of the debtor. I don't believe that was the case. I think, you know, I think you're right that there's a really good reason to encourage people to amend schedules, and there ought to be, that ought to be acknowledged and people ought to do it when they get additional information or they remember something or goodness knows what. But what troubles me and I think what Judge Ferris was saying is you're basically reading the knowingly and willingly, knowingly and fraudulently piece out of the requirements. And when you file something, you're required to list everything that you know about. And, you know, if you conceal something or make a false oath knowingly and fraudulently, you know, at that moment, there can be liability. It doesn't mean you don't have to amend. You can still amend. But those are two different questions in my mind. Okay, which gets me more to the facts of this case. So sort of an end run to the facts of this case, which I believe was not considered by the court or disregarded by the court. And it has to do with the issue of what is the role of the Chapter 7 trustee, what is the role of the U.S. trustee contraposed with this case and the application with the debtor. The facts show clearly, for example, the petition filed in May 2010. Over 1.2 million in accounts receivable were listed on there. There's no dispute about it. That is not a disputed fact. Two bankruptcies were filed, my personal one and the company bankruptcy. You had two 340 money hearings. The testimony of the Chapter 7 trustee was that his practice was that if any assets were disclosed, whether it by schedule or informally, that he would investigate. And, two, his practice was to have a discussion with any concurrent trustee or concurrent case that would be related to his bankruptcy case, which was the case. You had a concurrent case going on. And so May 2010, so from the period of May 2010 to July 2011, there is clear facts that I, as the debtor, was insisting that the trustee investigate certain cases, look at certain cases, look at certain assets. There were problems with the attorney that was representing me. I was not an expert in bankruptcy. A big deal was made that I was a licensed attorney. I didn't practice in the bankruptcy courts. And so then in July 2011, Exhibit 3 and 4 of the appendix. You now have five minutes to go, but you may proceed if you wish. But you're using up your time. I'll proceed if I can reserve the last remaining, if there's any remaining. Exhibits 3 and 4 I think are important to this Court to look at because it shows that the answer and the counterclaim raise these issues. There was a counterclaim against the chapter trustee that said, you're not going after the assets, you're violating 11 U.S.C. 704, and we get to the June 2012 hearing. So nothing happens until June 2012. The Court excludes the Trial Exhibit 319, which discusses in front of Judge Donovan all these issues related to assets, claims, whether the trustee should go for it. U.S. trustee, and I heard the equitable discussion in the previous case, which I believe is important here, did not object at that hearing when the chapter trustee suggested that I reamend the schedules, bring in the claims, bring in stuff from the business bankruptcy so that he could pursue the assets. There's no objection by the U.S. trustee. What does the U.S. trustee do? In January 2014, amends its complaint for the second time to add those claims from the June 2012 hearing as being the fraudulent basis for a denial of the discharge. But why didn't you disclose those claims at the beginning? I had. I had in the 341A. No, in the schedules, in the schedules. I had an attorney. I was honestly, it was not my practice. And that's why in the testimony at trial, the whole point was, and I think the point of this hearing is, what are the definitive rules? Can the trustee, can the chapter trustee turn a blind eye to information that comes to him if it's not perfectly in the schedules? And this gets back to that strict liability. So does the intentional and fraudulent aspect of 727 mean if you don't perfectly file your schedules on the first petition that you deny the discharge? I think there's an in-between here. I don't believe on, they have gone to one side on my case, and I believe obviously there's a more pure side on the case that somebody forgets, but, you know, has reason to forget, or they didn't look at it because then now it gets on a case-by-case basis. So it just seems to me inconsistent with the position of a U.S. trustee. They're a Department of Justice. They're supposed to do justice. And the concept that they waited until 2014 to file it, the Chapter 7 trustee doesn't do anything for a two-year period of time until forced at the June 20th hearing, basically by Judge Donovan, to proceed with it, waits until May 2014 to proceed, and then Judge Mund in her tentative ruling says that somehow I caused the depletion of assets and the failure of the Chapter trustee to go after these assets. If you stop now, you'll have two minutes to come back. And I'll reserve. Thank you, Your Honor. Thank you. May it please the Court, my name is Russell Clemmons, and I'm an attorney for the U.S. Department of Justice, representing Appelli, the United States trustee. Your Honors, counsel has focused his arguments on Section 4004, stating that the stipulation that he had entered into could not validly extend the discharge deadline. Counsel waived those objections by sending the stipulation himself. The requirements of 4004 are not jurisdictional, and they can be waived. And when counsel agreed to extend the deadline and put the facts in the stipulation he thought were necessary, and we did as well and the Court approved it, that was the end of it as far as we're concerned. The extension of deadlines by stipulation is common practice. We've cited case law in our briefs that indicate that a stipulated order or an agreed order can satisfy the motion requirement of 4004. The case where the attorney simply agreed, of course, does not satisfy that. There was nothing before the Court, and that does make a big difference. As to counsel's arguments that Rule 1009 somehow completely obliterates Section 727 because one can freely amend, we simply disagree. Yes, one can amend schedules, and that does happen every day. However, in this case— Counsel, can I ask you something that we're concerned about? 727A2A talks about concealment of property of the debtor in the year prior to the bankruptcy petition. Where are the findings about that? Your Honor, in this case, we pled both violation of Section 727A2A, concealment before, and 727A2B, concealment after. Well, 2B relates to concealment of property of the estate after the petition is filed. The judge found—denied the discharge on the basis of the first subsection, property of the debtor, but denied revoking the discharge or not granting the discharge under subsection B, property of the estate. Was that a mistake? Your Honor, we believe that this court can affirm, as far as the litigation claims, which we allege were concealed, we believe that this court can affirm under 727A2A or A2B. The court made a factual finding that Mr. Shoemaker knew about these claims before he filed his bankruptcy case, and he was in the process of closing his law practice, and therefore these claims were concealed prior. Are there any findings to the effect that the debtor, during the one year before the bankruptcy was filed, concealed assets? There was a finding by the court that he knew about these claims. But I think if I'm hearing Judge Kurtz's question, it's one files schedules, and the effect is as of the day you filed the schedule,  and presumably I don't have any others. So as to B, that's an estate issue, and that you may be right on. But the question is, how do you get to A, a concealment within the year prior to the bankruptcy case? If all you're relying on is the schedules, how do the schedules speak backwards in effect, I guess is the question. Your Honor, we frankly believe that this court can affirm under A2B in this case. And forget A2A? Yes. So you're asking us to overturn the judge's ruling that discharge would be granted under B? Well, no, we're not. The court chose to make its ruling under A2A. We pled both in our complaint. Most of the facts that related to property concealed after were things that the court found Mr. Shoemaker did not have the requisite intent. The inheritance and the gift to the girlfriend. But as to the litigation claims that form the basis of denial of discharge, the court found that Mr. Shoemaker knew about those claims, and that's why the court found denial under A2B. Well, that's a different subsection, false oaths, and we can get to that. But here's my concern. The judge says I'm denying the discharge under A2A. I'm not denying the judge under A2B. There are no findings that would support a denial of discharge under A2A. There's no findings that he concealed assets of the debtor before the bankruptcy was filed. It's unsupported with any factual findings that the judge made. It seems from the record that the judge conflated A2A with A2B. And so what do we do about that? I think because the record is clear that the litigation claims were concealed, we think they were concealed both before and after the case was filed. Mr. Shoemaker does provide an aging report of the accounts receivables in his schedules. He was in the process of closing his law practice. In his schedules, he essentially says, here are the records that I have in support of the claims that are due me for my law practice. He omits $10 million for litigation claims. Before the bankruptcies filed, who did he conceal them from? What did he do to conceal those assets before he filed this petition? Is there any evidence that he did anything in that time period to conceal anything from anybody? The fact that they didn't show up in the aging report I think is some evidence of that. I mean, I think what the aging report showed up in the schedules, right? And we don't know if anybody before the bankruptcy saw the aging report, right? Mr. Shoemaker did. He was a sole practitioner. Right, but he wouldn't conceal from himself, I suppose. Who knows? You see what I'm driving at? We're looking at conduct before he filed a petition under A2A. I just don't see evidence of concealment before that moment. And, Your Honor, I think really the facts in this case. Concealment, I think, is different than transfer. Transfer, you can look at a point in time, and I think that's what the court did here. Where's the evidence of transfers? I'm making the distinction between transfer and concealment. They're all in the statute. A transfer, we can point to a point in time. And I'm accepting your distinction. You're saying, well, we're not talking about concealments. We're talking about transfers. Where's the evidence of transfers? We're talking about concealments, Your Honor. Perhaps that was unclear. We're talking about concealments. Concealment, by its nature, is different than transfer. We believe that there was essentially a continuing concealment here that lasted throughout the bankruptcy case. And the point that I really want to make with that is Mr. Shoemaker made a conscious and deliberate decision to conceal the litigation claims. And he admitted that in the pretrial stipulation, and he affirmed it again in his closing trial brief. He thought that this was some sort of discussion between him and the Chapter 7 trustee as to what he would disclose and what he would hold back. He again refers to it as a negotiation. He simply either didn't understand or didn't perform his fiduciary duty as a debtor to conceal all of his assets and let the Chapter 7 trustee make that decision. And he admitted that, and that fact, I think, really formed the basis of the denial of discharge under 727A2. And we can quarrel about whether it's A2A or A2B, but I think it's uncontroverted that there was a concealment of assets in this case. As to false oaths, again, we don't have the issues that we've been talking about with concealment. We have admissions on false oaths, and the court can certainly affirm under A4A if it desires. But here are the false oaths related to material facts. A material fact is something that bears relationship to the bankruptcy, the assets of the bankruptcy estate. It doesn't have to be a showing of harm to creditors. And here it's uncontroverted that Mr. Schumacher knew about these litigation claims, and he simply held them back and was deciding perhaps the litigation. When the court got down to its ruling, it sort of said, well, what I really find that was concealed was the litigation claims, and it kind of blew off the trust claims and the other claims of concealment. Isn't that correct? That's correct. I think the exact language the court didn't feel it needed to reach those claims. In retrospect, was his valuing his litigation claims at $400,000 such an obvious deceit? I mean, I would bet dimes to dollars you haven't collected more than $400,000 from those litigation claims. No, Your Honor. But again, in judgment and being clear, that's not the test. The fact that she acknowledged that there was one $5,000 default judgment at the end of all this. He came back later and said that these were worth millions of dollars. And when he was sort of puffing up his litigation ability and the value of these claims, but in trying to persuade you to walk away from the dischargeability lawsuit because he was going to bring all this money into his bankruptcy estate. But in retrospect, $400,000 probably wasn't such a bad estimate of what the value of those claims were. Well, certainly, but more importantly, there was a whole different group of claims that was not disclosed. Mr. Shoemaker did disclose really a former client list, as I understand it. He contended that his former clients owed him money. The litigation claims were large contingent-based claims that he valued in the millions of dollars. It's undisputed that those claims were not in his original schedules. Thank you. Your Honor, as to, again, 1009 being a defense to 727, I think we've talked about the distinction already. The right to freely amend schedules does not absolve a debtor of liability under Section 727, and it's not a strict liability statute. We've never suggested that it is, and Judge Ferrer has correctly pointed out that the elements of intent certainly means that it's not a strict liability statute. The Court made detailed findings as to all the elements of both the concealment and false oath claims. They found Mr. Shoemaker knew about the assets. The Court found that he intended to hinder and defraud his creditors because he was waiting to see what the Chapter 7 trustee would do. And ultimately, the Court found that the materiality requirement was met as well. I'm happy to answer any other questions the Court has. Otherwise, we'll rest on our pleadings. Well, just to clear up the record, we have this problem with the A2A, A2B. You've not appealed the Court's ruling saying that the discharge would be granted under A2B, at least denying your objection to a discharge under that section. You haven't appealed that. So we can't fix that, can we? Your Honor can affirm the denial under a basis that's proven on this record. I think the distinction between A2A and A2B. Well, we can't affirm under A2A, can we? There are no findings to support such a denial. There's very little evidence, if any, in the case. I think there was a finding. The Court essentially found that Mr. Schumacher – the Court went to A2A, we believe, because it found that Mr. Schumacher knew about these assets before he filed his case. Now, if – Well, it wasn't the Court confused. I have deep respect for the Court. But the Court started talking about the materiality of the nondisclosure, which would not have been an element under A2A. It would only have been an element under A2B. So she made a finding under A2A but was talking about A2B. How do we fix that? Well, I think – I do believe this Court can affirm under A2B. I think we pled it. This Court can affirm under a legal basis that's supported by the record, and we think it's fully supported by the record. Do you think we should write a decision that says this is what she really meant? I – I've done that, by the way. This might be an appropriate case. I know everybody looks shocked, but I've done that. This might be an appropriate case. But we think that as to concealment, it was proven. As to false oaths, I don't think we have any of the issues that we've been talking about at length. Well, I'm inclined to agree with you. There was an A2B case here that was proven. It just – judge said no. I'm not granting that relief. I don't know how to fix that unless you appealed it. Thank you, Counsel. Thank you, Your Honor. Thank you. You have one minute and 55 seconds. Thank you, Your Honors. Hopefully I take less. I would just ask this Court if the – if this panel is not – if the 4004-9006 argument is not dispositive, the Court is going to take a look at the 727-824. I think the equities of this case should require it be remanded for further proceedings because the Court excluded that exhibit regarding the June 20th hearing, and that is the key – the key factor that put into motion the only evidence that the U.S. trustee was able to use to try and deny the discharge based on A4A. I really think – and this Court has mentioned the fact that all the other issues that they raised in the original complaint and the first amended complaint, the Court said it wasn't material. It all went by the wayside. So why should the U.S. trustee, under the concept of equity and bankruptcy being an equitable court, why should they be able to sit in a hearing – Well, the premise of your argument is, I think, faulty. You're saying that my obligation to accurately and honestly disclose assets on my bankruptcy petition is somehow dependent upon the conduct of the U.S. trustee. Absolutely. And somehow they can lure me into filing amended schedules that show that my first schedules were inaccurate and false. That's not a viable argument, counsel. Well, Your Honor, I don't think it's absolute either way. I'm not making an absolute argument. I'm saying there's two sides to this. Equity demands looking at both sides, not just one side. It isn't one-sided that a U.S. trustee can go in and say, this person is fraudulent because they didn't perfectly follow us or do certain things. Equity demands that you look at it. And I don't believe it was correctly looked at. I think there were a lot of things that weren't done, whether it's the chapter trustee, the U.S. trustee. It seemed the trustee focused strictly on the debtor, not what the chapter trustee was doing. And I would ask for a remand consistent with that, Your Honor, or it shows not to be done. Thank you very much. This matter is deemed submitted. We'll issue a memorandum decision.
judges: Kurtz, Faris, Lafferty